UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|                                  |                          |
|----------------------------------|--------------------------|
| UNITED STATES OF AMERICA,        |                          |
|                       Plaintiff, |                          |
| v.                               | Case No. 12-CR-242-2-JPS |
| JAMES E. WARREN,                 |                          |
|                       Defendant. | ORDER                    |

Federal officers arrested the defendant, James Warren, on January 11, 2013. (Docket #15). While arresting Mr. Warren, the officers located additional controlled substances, specifically methylenedioxymethamphetamine ("ecstasy" or "MDMA") and marijuana, as well as a digital scale and sandwich baggies. (Docket #38, #57). Thus, the grand jury returned a superseding indictment against Mr. Warren, charging him with an additional count of possessing MDMA with intent to distribute. (Docket #35).

Mr. Warren moved to suppress the evidence seized during his arrest, and requested an evidentiary hearing in that regard. (Docket #38, #57). Magistrate Judge Aaron Goodstein held an evidentiary hearing on the matter on April 15, 2013, and thereafter issued a report and recommendation, in which he recommends that Mr. Warren's motion be denied. (Docket #52). Mr. Warren has filed an objection to Magistrate Goodstein's report and recommendation. (Docket #57).

The Court has reviewed all of these materials, and will adopt the magistrate's report and recommendation for the reasons that follow.

1. BACKGROUND

The grand jury returned an eight-count indictment against Mr. Warren and another individual on November 14, 2012. (Docket #1). On January 11, 2013, a number of deputies from the United States Marshal Service went to Mr. Warren's residence to arrest him pursuant to a federal warrant issued on the indictment. (Docket #15).

When the deputies arrived, they knocked on Mr. Warren's door. Candace Ward, the mother of a number of Mr. Warren's children, opened the door slightly. She then ran into the residence yelling Mr. Warren's nickname in an apparent attempt to alert Mr. Warren to the deputies' presence. One of the deputies, Jeremy Loesch, detained Ms. Ward near the front porch and began to question her. Other deputies entered the residence, and found Mr. Warren in a bedroom.

After finding Mr. Warren, the deputies took him into custody by placing him in a chair near the front room of the residence. Another deputy, Zach Kadish, stood in that front room to keep watch over Mr. Warren, during which time he noticed a glass jar and scale on a table in the next-door kitchen. Deputy Kadish noticed that the glass jar contained multi-colored pills, which he believed to be ecstasy, and directed Deputy Loesch's attention to the jar when Deputy Loesch entered the residence.

After the deputies made this discovery, detectives arrived to take pictures of the crime scene and seize the contraband. However, approximately 45 minutes passed between the discovery of the contraband and the time when the crime scene photos were taken.

On the basis of the additional contraband seized during the raid, the grand jury returned a superseding indictment, charging Mr. Warren with an

additional count of possessing MDMA with the intent to distribute. Mr. Warren filed a motion to suppress the evidence seized during the arrest, and Magistrate Goodstein held a hearing on that matter, at which Deputies Loesch and Kadish, as well as Ms. Ward, testified.

Deputies Loesch and Kadish testified primarily to the facts set forth above.

Ms. Ward, however, provided additional testimony that she had never seen Mr. Warren leave the jar of ecstasy and marijuana in the open. Instead, she testified that Mr. Warren typically kept the jar in his bedroom closet. However, she also testified that she generally would not stay overnight at Mr. Warren's residence on weeknights; thus, it was slightly out-of-the-ordinary for Ms. Ward to be present on the night before and during the arrest, which itself took place on a Friday. Mr. Warren relies on this testimony to support his argument that he did not have the glass jar in the open, and instead that the officers retrieved it during an illegal protective sweep and then placed it on the kitchen table to appear as if it was in the open.

The parties also introduced a number of exhibits, most importantly photographs of the crime scene, which show the kitchen area from which the glass jar was recovered. The glass jar does not appear in every photo, and Mr. Warren uses that fact to further buttress his argument that the glass jar was not openly displayed on his kitchen counter when discovered by the deputies.

In spite of that evidence, Magistrate Goodstein found that the government had met its burden of proof to establish an exception to the search warrant requirement, thus allowing the seizure of the contraband.

(Docket #52). Accordingly, Magistrate Goodstein recommended that this Court should deny Mr. Warren's motion to suppress, to which Mr. Warren has filed his objection. The matter is now before the Court for a final decision. (Docket #52).

2. ANALYSIS

When reviewing a magistrate's recommendation, the Court is obliged to analyze the recommendation *de novo.* 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Goodstein's findings and recommendation is not limited to his legal analysis alone; rather, the Court may also review his factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

Here, there is no question that the arrest warrant was valid and that the officers had a reasonable belief that Mr. Warren was inside of his residence. Therefore, the deputies' entry into his house was lawful. *Payton v. New York*, 445 U.S. 573 (1980); *Steagald v. United States*, 451 U.S. 204 (1981).

As such, so long as the glass jar and other contraband were in plain view, the deputies' seizure of such items was also lawful. *United States v. Raney*, 342 F.3d 551, 558–59 (7th Cir. 2003) (citing *United States v. Bruce*, 109 F.3d 323, 328–39 (7th Cir. 1997)). Thus, there is only one question that this Court must decide, and it is a primarily factual one: whether the government established, by a preponderance of the evidence, that the glass jar and other contraband were in plain view of the deputies during their arrest of Mr. Warren. *See, e.g., United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

Through the testimony of witnesses and submission of evidence at the evidentiary hearing, the government has satisfied that burden of proof. To begin, both Deputies Loesch and Kadish offered consistent and uncontradicted testimony establishing their locations during the arrest, and when each saw the contraband. Deputy Kadish's testimony, in particular, provides a clear and cogent narrative that he entered the residence and then stood in view of the kitchen table on which the contraband was found while standing with Mr. Warren, who was in custody. From those facts, Deputy Kadish deduced that no other person present could have moved the contraband from one part of the residence to another. The magistrate found that testimony to be credible, and this Court concurs. There is nothing, whatsoever, in the record to suggest that either Deputy Kadish or Deputy Loesch lacked credibility in any way, and Mr. Warren, himself, points to nothing in that regard.

Furthermore, none of the evidence or testimony goes against the testimony of Deputies Kadish and Loesch. Indeed, none of the evidence or testimony highlighted by Mr. Warren establishes much of anything. As to the pictures, Mr. Warren argues that the contraband must have been planted on the table after the initial arrest, because the contraband is visible in Exhibit 4, but is not visible in Exhibit 3A. This evidence is not remotely probative of the contention that the jar was not on the table when the arrest was made. The pictures were taken approximately 45 minutes after the arrest. Moreover, the crime scene was in a state of flux, as evidenced by the child present in Exhibit 3A, and there is the potential that the contraband could have moved slightly either during the 45 minute gap before pictures were taken or in between pictures.

Additionally, while the contraband is not visible in Exhibit 3A, it very well could still have been in the precise location suggested by the deputies and shown in Exhibit 4. In Exhibit 3A, an officer slightly obstructed the kitchen table on which the deputies found the contraband. A number of objects are visible on the table behind him, including the following relevant items, from left to right: (1) a tall vodka bottle; (2) a white cup; (3) a light blue canister; and (4) a smaller glass bottle. As already mentioned, the glass jar of contraband is not visible, presumably hidden behind the officer's vest. Regardless, a spacial examination of Exhibit 4 reveals that the glass jar of contraband would not have been visible in Exhibit 3A due to its obstructed location on the table. Indeed, in both pictures, the glass jar appears to be located several inches closer to the left-hand side of the table than the bottle of vodka, which is closer to the center (several inches further to the right than the vodka bottle). Thus, not only is it likely that the contraband was, indeed, on the table precisely where Deputies Kadish and Loesch suggested, but furthermore, as discussed in the paragraph above, an opposite finding would carry little relevance to the issue of whether the deputies found the contraband in plain view.

Finally, Ms. Ward's testimony also carries little weight on the issue of whether the contraband was found in plain view. Ms. Ward testified to Mr. Warren's *common* practice. She did not, however, provide any conclusive statement that Mr. Warren had not placed the contraband on the kitchen table in this one instance. To be sure, as Magistrate Goodstein pointed out, there were a number of things about the occasion that were outside of the ordinary. For instance, Ms. Ward and her children had stayed on a weeknight at Mr. Warren's house, contrary to their standard practice of

staying only on the weekends. Thus, it is not out of the question that, on this rare occasion, Mr. Warren failed to put the glass jar away in his closet. There are many other items also on the table, including baggies and vodka, all of which were also not out of view during the children's visit. Certainly, there is more than a possibility that Mr. Warren did not put away his glass jar on this occasion. And Ms. Ward's testimony regarding his tendency to do so—without any evidence that he actually *did* so—cannot overcome the credible testimony of the deputies, who testified that they found the glass jar in plain view.

Mr. Warren objects to Magistrate Goodstein's statement that the contraband could have been lawfully seized during a protective sweep, but the Court's recommendation was not based upon that finding and, therefore, the Court does not view it as relevant. The magistrate reached his holding on the basis of the evidence and testimony at the hearing, and simply supplemented that holding with his discussion of a potentially-lawful seizure pursuant to a protective sweep. While his conclusion on that statement may have been in error, given the fact that Mr. Warren had already been apprehended and there was no indication of further danger, the conclusion was not necessary to his analysis.

Nor does this Court rely on a hypothetical seizure during the protective sweep in any fashion. Instead, as already discussed, the evidence and testimony established at least a preponderance of the evidence that the contraband was in plain view and therefore subject to seizure. Therefore, the seizure of the contraband was lawful and Mr. Warren's motion to suppress must be denied.

3. CONCLUSION

For these reasons, the Court is obliged to adopt Magistrate Goodstein's report and recommendation, and deny Mr. Warren's motion to suppress.

Accordingly,

IT IS ORDERED that Magistrate Judge Aaron E. Goodstein's report and recommendation (Docket #52) be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that, consistent with the Court's adoption of the magistrate judge's report and recommendation, the defendant's motion to suppress (Docket #38) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 6th day of May, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge